UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

KIM TEEL,
    Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:13-cv-131
Dlott, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's applications for disability insurance benefits (DIB) and supplemental security income (SSI). This matter is before the Court on plaintiff's Statement of Errors (Doc. 11), the Commissioner's response in opposition (Doc. 17), and plaintiff's reply memorandum (Doc. 22).

## I. Procedural Background

Plaintiff protectively filed applications for DIB and SSI on August 28, 2007, alleging disability since August 24, 2007, due to depression, arthritis and carpal tunnel syndrome. Plaintiff's applications were denied initially and upon reconsideration. On February 9, 2010, a hearing was held before administrative law judge (ALJ) Larry Temin (Tr. 27-69), who issued a decision denying plaintiff's applications for benefits. (Tr. 8-26). The Appeals Council denied plaintiff's request for review, and the ALJ's decision became the Commissioner's final decision.

Plaintiff filed an action in this Court on September 8, 2010, seeking judicial review of the Commissioner's decision. *Teel v. Commissioner of Social Security*, No. 1:10-cv-613.

Subsequently, the Court remanded the matter to the Commissioner for further administrative proceedings. *Id.*, Docs. 24, 30. *See also* Tr. 681-749.

On remand, the Appeals Council vacated the ALJ's decision and remanded the matter to the ALJ in March 2012 for further proceedings consistent with the Court's remand order. (Tr. 750-52). Prior to the remand, while plaintiff's appeal was pending in this Court, plaintiff had filed new applications for DIB and SSI benefits in September 2010. (Tr. 886-98). The Appeals Council ordered the ALJ to associate the claim files for the August 2007 claims and the subsequent claims and to issue a new decision on the associated claims. (Tr. 752).

Pursuant to the Appeals Council's order, ALJ Temin held a hearing on September 4, 2012 (Tr. 566-608), and subsequently issued a decision denying plaintiff's applications for benefits. (Tr. 534-51). The Appeals Council denied plaintiff's request for review, and the ALJ's decision became the Commissioner's final decision.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A) (DIB), 1382c(a)(3)(A) (SSI). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2

2) If the claimant does not have a severe medically determinable physical or mental impairment - *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities - the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.; Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir. 1999).

### B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

1. The [plaintiff met] the insured status requirements of the Social Security Act only through March 31, 2013.

2. The [plaintiff] has not engaged in substantial gainful activity since August 24, 2007, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3

3. The [plaintiff] has the following severe impairments: cervical spine stenosis; degenerative disc disease of the lumbosacral spine; bilateral carpal tunnel syndrome status post release on the left; left hip bursitis; an affective disorder; and borderline intellectual functioning (20 CFR 404.1520(c) and 416.920(c)).

4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the [ALJ] finds that the [plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except as follows: The [plaintiff] can lift/carry up to 20 pounds occasionally and 10 pounds frequently. She can stand and/or walk a limit of six hours in an eight-hour workday. She can only occasionally stoop, kneel, crouch, and climb ramps or stairs. She can never crawl or climb ladders/ropes/scaffolds. She can never operate controls with her right lower extremity or perform other work requiring the forceful use of her right lower extremity. She can never work at unprotected heights or work around hazardous machinery. She is able to remember and carry out only short and simple instructions. She cannot interact with the general public. She cannot interact with coworkers or supervisors more than occasionally. She cannot work at a rapid production-rate pace. The job should not require strict production quotas. The job should not require more than ordinary and routine changes in work setting or duties. The [plaintiff] is able to make only simple work-related decisions.

6. The [plaintiff] is capable of performing past relevant work as a cleaner/housekeeper. This work does not require the performance of work related activities precluded by the [plaintiff]'s residual functional capacity (20 CFR 404.1565 and 416.965).

7. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from August 24, 2007, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(Tr. 536-51).

### C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by

substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

### D.  Specific Errors

The medical findings and opinions of record have been adequately summarized in the parties' briefs (Doc. 11 at 2-11, Doc. 17 at 3-11) and will not be repeated here. Where applicable, the Court will identify the medical evidence relevant to its decision.

On appeal, plaintiff argues that the ALJ erred by: (1) fashioning a residual functional capacity (RFC) that is not supported by substantial evidence because it omits a limitation that plaintiff be permitted to alternate sitting/standing at 30-minute intervals, and it fails to fully account for plaintiff's psychological impairments; and (2) finding that plaintiff can perform her past relevant work as a cleaner/housekeeper, and alternatively that there are a significant number of jobs she is capable of performing. (Doc. 11).

1. **The RFC finding**

   a. **Plaintiff's arguments**

Plaintiff's first assignment of error is somewhat difficult to decipher. Plaintiff's counsel initially argues that the ALJ "failed to fairly consider the objective evidence" of record and therefore did not craft an RFC which addresses plaintiff's ability to perform work activity on "a regular and continuing basis" as required under Social Security Ruling 96-8p. (Doc. 11 at 14-15) (emphasis in plaintiff's brief). Social Security Ruling 96-8p requires that the RFC assessment include a narrative discussion of how the evidence supports each conclusion and that the ALJ "discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis . . . and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. . . ." SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996). Plaintiff's counsel has not developed this particular argument, and the Court therefore will not address it.

Plaintiff's counsel then argues that the ALJ "also illogically failed to include in the RFC the requirement that Plaintiff alternate between sitting and standing at 30 minute intervals, as recommended by Plaintiff's treating physicians and as is necessary to accommodate the arthritis

in Plaintiff's spine, hips and right knee." (Doc. 11 at 15). Plaintiff's counsel initially contends that although the ALJ found obesity and mild hip and right foot degenerative changes to be non-severe impairments and failed to specify whether plaintiff's knee impairment was a "severe" impairment, plaintiff's hip, knee and feet arthritis are in fact "severe" impairments which the ALJ was required to accommodate in the RFC. (*Id.*). Plaintiff's counsel then goes on to cite a litany of objective findings related to arthritis and numerous other physical impairments ranging from disc disease to carpal tunnel syndrome to a ganglion cyst, which she concludes affect her ability to sit, stand or walk for any length of time. (*Id.* at 16).

Plaintiff's counsel then argues that plaintiff's testimony at both the 2010 and 2012 ALJ hearings and the opinions of her treating and examining physicians support the inclusion of an alternating sit/stand limitation in the RFC finding. (*Id.* at 16-17). Plaintiff contends that in discounting the opinions of her treating physicians in both his 2010 and 2012 decisions, the ALJ focused primarily on those records which supported his decision while failing to consider those findings which supported the treating physicians' opinions. (*Id.* at 17-18). Plaintiff acknowledges that while this Court held in its prior remand decision that the ALJ's decision to discount the opinions of the treating physicians was substantially supported by the evidence of record, "the evidence which was submitted after the claims were remanded includes enough objective evidence of disability so that the ALJ's 2012 decision to disregard the opinions of the treating physicians is no longer supported by substantial evidence." (*Id.* at 17, n. 5).

Plaintiff's counsel further argues that plaintiff's mental impairments cause many more limitations than the ALJ acknowledged in either his 2010 or 2012 decision. (*Id.* at 18-19). Plaintiff's counsel lists the objective findings and conclusions of the mental health sources - Drs.

Chiappone, Caldwell, Berg, Hollis and Murthy - before concluding that the ALJ "should have accepted the opinion of the treating psychiatrist from Central Clinic, Dr. Bates," whose findings would have required the ALJ to find plaintiff is disabled.  (*Id*. at 19-20).

The Commissioner construed the above arguments as asserting two errors: (1) the ALJ erred at step two of the sequential analysis by failing to specify whether plaintiff's arthritis of the right knee was a "severe" impairment, and (2) the ALJ improperly discounted the opinions of plaintiff's treating physicians by failing to include a sit/stand limitation in the RFC and by failing to properly account for the mental limitations imposed by the treating psychiatrist, Dr. Abra Bates, M.D.  (Doc. 17 at 13-24).

In reply, plaintiff's counsel summarizes the first assignment of error as follows:  The ALJ committed error by crafting an RFC which (1) does not adequately account for plaintiff's physical limitations by including a restriction that plaintiff must alternate sitting/standing at 30-minute intervals, and (2) does not adequately account for plaintiff's mental limitations.  The Court will address each of these arguments in turn.

b. **The RFC finding adequately accounts for plaintiff's physical impairments.**

The ALJ found that plaintiff could perform light work as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b) with the following physical restrictions:

> The [plaintiff] can lift/carry up to 20 pounds occasionally and 10 pounds frequently.  She can stand and/or walk a limit of six hours in an eight-hour workday.  She can only occasionally stoop, kneel, crouch, and climb ramps or stairs.  She can never crawl or climb ladders/ropes/scaffolds.  She can never operate controls with her right lower extremity or perform other work requiring the forceful use of her right lower extremity.  She can never work at unprotected heights or work around hazardous machinery.

(Tr. 539).

Plaintiff argues that the ALJ failed to consider evidence of record which supports a finding that she must alternate between sitting and standing at 30-minute intervals. Plaintiff appears to have drawn this alternating sit/stand limitation from two sources: (1) testimony she gave at both the 2010 and 2012 ALJ hearings, and (2) the assessments of her treating physicians, Drs. Alexander and Aurand. (Doc. 11 at 16-17).

Plaintiff testified at the 2012 ALJ hearing that she has difficulty standing more than 15 minutes, sitting more than 30 minutes, and walking more than 15 minutes without stopping.[1] (Doc. 11 at 16-17, citing Tr. 585; *see also* Tr. 586). In his decision, the ALJ acknowledged plaintiff's testimony regarding her inability to sit or stand for a sustained period of time and her prior testimony from the 2010 hearing that she can walk one-half block. (Tr. 540). However, he found plaintiff's allegations of her symptoms and limitations were not fully credible for reasons he thoroughly discussed in the decision. (Tr. 545-549). Plaintiff has not challenged the ALJ's credibility assessment, which is entitled to deference here. *See Torres v. Comm'r of Soc. Sec.*, 490 F. App'x 748, 755 (6th Cir. 2012) (credibility determinations regarding the claimant's subjective complaints of pain rest with the ALJ and are afforded great weight and deference as long as they are supported by substantial evidence). Accordingly, the ALJ was not required to incorporate an alternating sit/stand limitation into the RFC finding based on plaintiff's testimony at the ALJ hearings.

In addition to her testimony, plaintiff contends that Drs. Alexander and Aurand have "opined repeatedly that Plaintiff must alternate sitting and standing throughout a work day."

---

[1] Plaintiff's counsel states that plaintiff testified at both the 2010 and 2012 hearings that she has difficulty walking more than one-half block without stopping. (Doc. 11 at 16, citing Tr. 585). The cited portion of the 2012 ALJ hearing does not include any testimony to that effect.

9

(Doc. 11 at 17, citing Tr. 233-43, 283-86, 1065-1101, 1140-41, 1164-1239).[2] Dr. Alexander issued an assessment dated October 8, 2009, in which he opined that plaintiff was limited to standing/walking two hours in an eight-hour workday and one hour without interruption and sitting eight hours and for one hour without interruption. (Tr. 284-86). One month later, in November 2009, Dr. Alexander completed an assessment indicating plaintiff was limited to two hours of standing/walking in an eight-hour workday and one hour without interruption, and the amount of sitting she could perform "varies" but was limited to 25 minutes without interruption. (Tr. 447-51). Dr. Aurand opined in April 2011 that plaintiff was limited to walking 30 minutes in an eight-hour workday, standing/walking a total of approximately two to three hours, and standing/walking for one-half hour without interruption, and she was limited to sitting four hours total and one hour without interruption. (Tr. 1140-41). In November 2011 and July 2012, Dr. Aurund indicated that in an eight-hour workday plaintiff could walk for thirty minutes, stand/walk for two hours, and stand/walk for 30 minutes without interruption, and she could sit for four hours and one hour without interruption. (Tr. 1237-1238, 1220-21).

The ALJ was not bound to adopt any sit/stand limitation imposed by either Dr. Alexander or Dr. Aurand. This Court previously upheld the ALJ's decision to reject Dr. Alexander's 2009 assessments. (Case No. 1:10-cv-613, Docs. 24, 29; Tr. 681-749). Plaintiff has not established any basis for overturning the Court's prior determination. Plaintiff alleges that "the evidence which was submitted after the claims were remanded includes enough objective evidence of disability so that the ALJ's 2012 decision to disregard the opinions of the treating physicians is

---

[2] Dozens of the cited pages of evidence have no apparent connection with a sit/stand limitation imposed by either Dr. Alexander or Dr. Aurand. (*See* Tr. 233-43- consultative examiner Dr. Richard T. Sheridan's 10/07 report; Tr. 1065-1101- Dr. Aurand 2010 treatment notes; Tr. 1164-1218, 1222-1236- Dr. Aurand treatment notes and other health records, including a mammography report).

10

no longer supported by substantial evidence." (Doc. 11 at 17, n. 5). Plaintiff contends that the ALJ ignored objective findings in the treatment records which supported the findings of Dr. Alexander, including abnormalities on physical examination during most of her office visits "particularly starting in 2009 and worsening as the years progressed and continuing into 2010, 2011, and 2012. . . ." (Doc. 11 at 17). Plaintiff alleges that her low back, right hip and right knee pain in combination worsened between 2010 and 2012, and the objective findings during physical examinations became more severe. (Doc. 22 at 2). However, plaintiff does not point to any specific evidence to support her argument of worsening symptoms. Instead, plaintiff simply lists a number of findings made by Drs. Aurand and Alexander on physical examination between 2009 and 2012 - including spasm, tenderness to palpation, reduced range of motion, crepitus and swelling of her right knee, diminished sensation to a portion of her right lateral thigh, difficulty getting on and off the examination table, and slight weakness with stooping and rising - followed by a series of transcript page numbers with no description of the page contents. (Doc. 11 at 17-18).

The Court has reviewed the cited portions of the transcript. These post-remand records, reviewed as a whole, do not show the ALJ erred by failing to incorporate into the 2012 RFC finding the extremely restrictive standing/walking and sitting limitations imposed by Dr. Alexander in 2009. Nor does plaintiff explain how the records show a worsening of her symptoms subsequent to 2009. To the contrary, the examination findings continued to be relatively mild and the treatment records consistently show normal neurological examination findings, including a normal gait. (*See, e.g.*, Tr. 497- 1/10: painful spine flexion and extension, tenderness over lumbar and sacral vertebra, normal gait and neurological exam; Tr. 1097- 3/10:

11

painful spine flexion and extension, lumbar and thoracic tenderness, normal gait and neurological exam; Tr. 1069- 9/10: painful spine flexion and extension, lumbar tenderness, normal gait and neurological exam; Tr. 1149-50- 3/11: reported history of dull aching and stabbing back pain, non-radiating, which had been occurring in intermittent pattern for four years with course noted to be decreasing, muscle spasm and tenderness, no abnormal neurological signs present, normal gait; Tr. 1144- 5/11: non-radiating dull back pain reported, right knee joint pain since surgery with stiffness and swelling, normal neurological exam; Tr. 1202- 9/11: negative straight leg raising, no tenderness, normal gait, normal reflexes; Tr. 1198- 10/11: restricted extension and flexion, paraspinous muscle spasm, tenderness, normal gait and neurological exam; Tr. 1188- 1/12: painful flexion and extension of spine, muscle spasm, no tenderness, normal neurological exam; Tr. 1183- 3/12: tenderness over lumbar vertebra, muscle spasm, painful flexion, walking program to be resumed; Tr. 1171- 6/12: pain with hip movements, mild tenderness on left, no erythema, warmth, or crepitus; Tr. 165-7/12: normal lower extremity exam with no edema, normal neurological exam, normal musculoskeletal exam with no CVA tenderness bilaterally).

In addition to failing to show that the ALJ erred by rejecting sitting and standing restrictions imposed by Dr. Alexander, plaintiff has not shown that the ALJ erred by failing to incorporate any sit/stand limitation included in Dr. Aurand's assessments. Plaintiff contends Dr. Aurand's opinions were supported by her treatment notes; the objective findings; the consistent opinions of Dr. Alexander and the consultative examiner, Dr. Sheridan; and positive imaging results. (Doc. 11 at 15-17; Doc. 22 at 3). However, a review of the ALJ's decision shows that the ALJ thoroughly considered the evidence of record and fulfilled his obligation to give "good reasons" in the decision for the weight given the treating physician's assessment, and those

reasons are substantially supported by the evidence in the case record. *See Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013); 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6).

The ALJ decided to afford Dr. Aurand's assessments "little weight." (Tr. 548). The ALJ found that those assessments were not consistent with Dr. Aurund's treatment notes, which frequently reflected normal gait, station and reflexes; Dr. Aurand reported that plaintiff's back pain was controlled by medication; the record reflects that plaintiff's treatment for her back pain has been "very conservative"; plaintiff had not complained of side effects from her medication; there was no objective indication that plaintiff required any ambulatory aide; and plaintiff walked for exercise. (*Id.*, Tr. 546). In addition, the ALJ noted that there were no recent MRI's or x-rays to show worsening back pain. (Tr. 546). The ALJ stated that the only MRIs were from 2009 and earlier, and it was to be expected that plaintiff's physicians would obtain updated studies if they suspected significant pathology. (*Id.*). These reasons substantially support the ALJ's determination to give Dr. Aurand's assessments "little weight." (Tr. 548). The ALJ was not required to include in the RFC finding the sit/stand restrictions assessed by Dr. Aurand for the reasons stated by the ALJ in his decision. (Tr. 546-548).

Plaintiff contends there is additional evidence which shows she suffers from "severe" impairments of hip, knee and feet arthritis and thereby indicates the ALJ was required to incorporate an alternating sit/stand limitation in the RFC. Apart from the findings of the treating physicians, which the ALJ was entitled to discount for the reasons explained above, plaintiff relies on: (1) the consultative examiner Dr. Sheridan's 2007 report assessing plaintiff's "squat" as 50% (Tr. 234), and (2) treatment she received from a podiatrist, Dr. Rodney Roof, DPM, in

late 2009 and early 2010 for foot pain caused by a ganglion cyst (Tr. 461-63), which was drained in 2009 after the pain worsened (Tr. 1122-23). (Doc. 11 at 15). However, the evidence does not show that plaintiff's ganglion cyst, which plaintiff described as "mildly painful" in January 2010 (Tr. 463), imposed functional limitations related to her ability to stand, walk or sit for extended periods of time. Moreover, neither Dr. Sheridan nor Dr. Roof indicated that plaintiff required an alternating sit/stand option to complete an eight-hour workday.

For these reasons, plaintiff has not shown the ALJ erred by failing to include an alternating sit/stand limitation in the RFC.

    c.  **The RFC adequately accounts for plaintiff's mental impairments.**

The ALJ included the following mental limitations in the 2012 RFC finding:

> [Plaintiff] is able to remember and carry out only short and simple instructions. She cannot interact with the general public. She cannot interact with coworkers or supervisors more than occasionally. She cannot work at a rapid production-rate pace. The job should not require strict production quotas. The job should not require more than ordinary and routine changes in work setting or duties. The [plaintiff] is able to make only simple work-related decisions.

(Tr. 539-40). Plaintiff alleges that she has many more mental functional limitations than are included in the RFC finding, but plaintiff's counsel does not present specific, cogent arguments to show the mental limitations omitted from the RFC finding. Nor does plaintiff point to evidence in the record to support any such additional limitations. Plaintiff recites a litany of objective findings by a number of treating and examining mental health providers, but she does not allege that these providers assessed any functional limitations that are not included in the RFC finding with the exception of those found by her treating psychiatrist, Dr. Bates. (Doc. 11 at 18-20). In fact, plaintiff acknowledges that the moderate limitations imposed by consultative examining psychologist Dr. David Chiappone, Ph.D., would make competitive work more

14

difficult but would not necessarily preclude all competitive work.[3] (Doc. 11 at 19, n. 6). She has cited no authority to show that the ALJ failed to adequately account for the moderate limitations imposed by Dr. Chiappone in the RFC finding.

Further, although plaintiff generally asserts that the ALJ "should have accepted" the opinion of Dr. Bates, a treating psychiatrist at Central Clinic, that she was "unable to meet competitive standards" in 7 of 20 mental aptitudes and would likely miss four or more days of work (Doc. 11 at 19-20), a review of the ALJ's decision shows that he fulfilled his obligation to give "good reasons" for his decision to afford "little weight" to Dr. Bates' findings. (Tr. 547, 548). *See Gayheart*, 710 F.3d at 376; 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6). The ALJ found that Dr. Bates' functional capacity findings were not consistent with the relevant mental health treatment notes, including plaintiff's recent mental status exams which indicated largely normal functioning; the functional capacity findings were not internally consistent; and Dr. Bates had seen plaintiff only four times when she completed her assessment. (Tr. 547, 548). Plaintiff offers no argument to show the ALJ was not entitled to discount Dr. Bates' opinion on these grounds.

### d. Conclusion

The ALJ's RFC finding is supported by substantial evidence. The ALJ did not err by omitting from the RFC finding either the limitation that plaintiff be permitted to alternate sitting and standing at 30-minute intervals, or unspecified mental limitations. Plaintiff's first assignment of error should be overruled.

---

[3] Plaintiff contends that "moderate" limitations in carrying out simple tasks would preclude her from consistently meeting the minimum standards of productivity for unskilled, competitive jobs and result in her eventually being terminated from those jobs, but she cites no authority to support her position. (*Id.*).

15

### 2. The ALJ's job-related findings.

Plaintiff alleges that the ALJ erred by finding she is capable of performing her past relevant work as a housekeeper/cleaner and, in the alternative, that she is capable of performing a significant number of jobs in the national economy. (Doc. 11 at 20-22). In support of her argument, plaintiff relies on the VE's testimony that if the need to alternate sitting/standing at 30-minute intervals were added to the ALJ's ultimate RFC finding, then plaintiff would not be capable of performing her past cleaner/housekeeper job and could perform only the job of tube operator, consisting of 102 jobs in the region and 16,000 jobs in the nation. (*Id.* at 21, citing Tr. 604, 606-07).

For the reasons stated in connection with plaintiff's first assignment of error, plaintiff has failed to show the ALJ's RFC finding, which omits an alternating sit/stand limitation, is not substantially supported by the evidence of record. Accordingly, the ALJ did not err by failing to rely on VE testimony that assumed plaintiff was restricted in this manner. Plaintiff's second assignment of error should be overruled.

### IT IS THEREFORE RECOMMENDED THAT:

The decision of the Commissioner be **AFFIRMED** and this matter be **CLOSED** on the docket of the Court.

Date: 2/3/14

Karen L. Litkovitz
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

KIM TEEL,                                    Case No. 1:13-cv-131
    Plaintiff,                          Dlott, J.
                                               Litkovitz, M.J.

vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).